UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| C&A INTERNATIONAL, LLC | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   Case No. 12-CV-180-JED-FHM |
| | ) |
| SOUTH BAY DISTRIBUTION, | ) |
| a/k/a | ) |
| SOUTHBAY DISTRIBUTION/LOGISTICS, | ) |
| a/k/a LOGISTICS TEAM, INC. | ) |
| | ) |
| **Defendant.** | ) |

## OPINION AND ORDER

The Court has for its consideration Defendant South Bay Distribution's ("South Bay") Motion to Dismiss or Transfer Venue (Doc. 18) and Brief in Support of the Motion to Dismiss or Transfer Venue (filed twice as Docs. 19 and 20). South Bay's motion argues that (i) the Court lacks personal jurisdiction over South Bay; (ii) venue is improper in this Court; (iii) the litigation should be transferred to the United States District Court for the Central District of California under 28 U.S.C. § 1404(a); and (iv) plaintiff's fraud claims should be dismissed. In response to South Bay's motion, plaintiff sought jurisdictional discovery (*see* Doc. 23), which the Court granted in its February 12, 2013 Opinion and Order (Doc. 28). Per the Court's Opinion, the parties have submitted supplemental briefing regarding whether jurisdiction is proper in this forum (Docs. 47, 48, and 49).[1]

---

[1] In addition, plaintiff filed a notice (Doc. 50) advising the Court that a recent Oklahoma Supreme Court opinion, *Mastercraft Floor Covering, Inc. v. Charlotte Flooring, Inc.*, 2013 WL 5716817 (Okla. Oct. 22, 2013), is – in the plaintiff's view – pertinent to the jurisdictional issue before the Court. South Bay filed a response challenging the relevance of the *Mastercraft* decision (Doc. 51).

## I. Background

Plaintiff C&A International, LLC ("C&A") is an Oklahoma limited liability company with its principal place of business in Tulsa County, Oklahoma. South Bay is a California corporation with its principal place of business in Walnut, California.[2] South Bay operates warehouses in the Los Angeles, California area as a third-party logistics company which stores inventory for customers and then fulfills orders by shipping products through common carriers on behalf of its customers. The parties' relationship began when Dan Maynard, a representative of C&A, contacted South Bay regarding storage of various products, including plastic trash cans, granite countertops, and associated components and carts, at its storage facility located in City of Industry, California (hereafter, the "warehouse"). In late March of 2009, C&A and South Bay entered into an agreement whereby South Bay would store products at its warehouse and ship those products for C&A. Specifically, James Lin, President of South Bay, signed the agreement in California and sent it via email to Loretta Murphy, owner of C&A, who accepted and signed the agreement on March 27, 2009, in Oklahoma. Pursuant to the agreement, once C&A received an order from a customer, it would create a bill of lading and a "Picking Ticket." C&A would then send the bill of lading and Picking Ticket to South Bay, who would fill the order and distribute the product through a common carrier to C&A's customer. All shipments were picked up by the common carriers from South Bay's California warehouse and no employee of South Bay ever traveled to Oklahoma in connection with performance of the agreement.

After approximately 18 months, the parties had a dispute which resulted in C&A filing this litigation. In this case, C&A alleges, among other things, that South Bay made various

---

[2] Jurisdictional discovery established that South Bay was purchased by Amerifreight, Inc. in February of 2010, which now operates under the trade name Logistics Team.

warranties and representations regarding its care for the products stored at the warehouse, its liability for those products if damaged, and the conditions by which the products would be stored. While it is not entirely clear, C&A's complaint appears to allege claims for breach of contract, unjust enrichment, and fraud.

As previously noted, South Bay immediately sought dismissal of this case or, in the alternative, a transfer to the Central District of California. In response, C&A sought jurisdictional discovery aimed at proving that South Bay's contacts with Oklahoma were sufficient to support personal jurisdiction. In its February 12, 2013 Opinion and Order (Doc. 28), the Court ordered that jurisdictional discovery, inclusive of two depositions and written discovery, occur with respect to the following three issues: (i) the relationship between South Bay and Logistics Team and the timing and nature of the merger discussed in exhibit 3 of plaintiff's response brief (Doc. 24); (ii) the potential existence of an agency relationship between Dan Maynard and South Bay; and (iii) the extent of South Bay's agency relationships in Oklahoma at or around the time plaintiff's cause of action arose. The parties were initially given 60 days to complete this discovery, but several extensions were granted. Upon completion of the jurisdictional discovery, the parties filed supplemental briefing (Docs. 47, 48, and 49) with respect to the issues raised in South Bay's motion to dismiss.

The jurisdictional discovery clarified several facts which were unclear from the initial record. As previously noted, it was established that South Bay Distribution was purchased by Amerifreight, Inc. It was also confirmed that Dan Maynard did not have an agency relationship with South Bay and that South Bay had no agency relationships in Oklahoma during the relevant time period.

## II. Standard

In *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086 (10th Cir. 1998), the Tenth Circuit clearly articulated the plaintiff's burden of establishing personal jurisdiction over an out-of-state defendant:

> "The Plaintiff bears the burden of establishing personal jurisdiction over the defendant." *Rambo v. American Southern Ins. Co.*, 839 F.2d 1415, 1417 (10th Cir.1988). When a district court rules on a Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, as in this case, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion. *Kuenzle v. HTM Sport–Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996). The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant. In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating "that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. 2174; *see also Rambo*, 839 F.2d at 1419 n. 6.

*Id*. at 1091. The allegations of the complaint must be accepted as true to the extent they are uncontroverted by a defendant's affidavit. *Taylor v. Phelan*, 912 F.2d 429, 431 (10th Cir. 1990). If the parties provide conflicting affidavits, all factual disputes must be resolved in plaintiff's favor and a prima facie showing of personal jurisdiction is sufficient to overcome defendant's objection. *Id*.

For the court to exercise personal jurisdiction over a nonresident defendant in a diversity action as is the case here, C&A must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See* 12 *Okla. Stat*. § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc*., 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins.*

*Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988)); *see also Hough v. Leonard*, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." *Conoco, Inc. v. Agrico Chem. Co.*, 115 P.3d 829, 835 (Okla. 2004) (citing *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" *Intercon*, 205 F.3d at 1247 (quoting *World–Wide Volkswagen*, 444 U.S. at 291). A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id*. at 1247 (quoting *Burger King*, 471 U.S. at 472 (1985)). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." *Id*. at 1247 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–16 & n.9 (1984)). "Because a state's sovereignty is territorial in nature, a defendant's contacts with the forum state must be sufficient such that, notwithstanding its lack of physical presence in the state, the state's exercise of sovereignty over it can be described as fair and just." *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citation omitted).

### III. Discussion

In its supplemental briefing, C&A primarily asserts that the Court has personal jurisdiction over South Bay because South Bay entered into a contractual relationship with an

Oklahoma business and that C&A's claims arise out of South Bay's contacts with Oklahoma.  In its original response to South Bay's motion to dismiss, C&A argued that this Court has both specific (i.e. minimum contacts) and general jurisdiction (i.e. systematic and continuous contacts) over South Bay.  However, C&A's supplemental briefing appears to focus solely on establishing minimum contacts, but does incorporate by reference the "general jurisdiction" arguments raised in its original response brief.  South Bay's supplemental briefing argues that jurisdictional discovery confirmed that this case should be dismissed or transferred.

### A. Specific Jurisdiction

South Bay argues that the facts alleged by C&A do not support a finding that South Bay had "minimum contacts" with Oklahoma sufficient to allow an Oklahoma court to exercise jurisdiction over it in a manner consistent with due process.  More specifically, South Bay maintains that its contacts with Oklahoma amount to nothing more than telephone calls and written communications directed at C&A.  C&A counters that South Bay did not "merely set its products adrift on a stormy sea of commerce," but rather purposefully reached out to do business with an Oklahoma company.  (Doc. 24, p. 2-3).

In a contract case such as this one, a court should consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1058 (10th Cir. 2008).  In that respect, C&A points to two emails sent by South Bay employees Chris Thiel, Vice President of Operations, and Joe Dabbs, Vice President of Sales, which C&A asserts are sufficient to constitute minimum contacts (Doc. 24-19; *see also* Doc. 47, at 3-4).  Both emails request that an employee of C&A resend a copy of the changes C&A had made to the proposed contract.  Both emails also make reference to some further review of the proposed contract which

is to occur in the future.  No other written negotiations between the parties have been submitted by either side.  The testimony of Joe Dabbs establishes that the relationship between the parties began when Dan Maynard reached out to South Bay for its warehousing services.  Maynard wished to relocate materials owned by C&A which were housed in a different warehouse at that time. (Doc. 48-1, at 118; 130-32).  Following Maynard's initial contact with South Bay, Dabbs and Maynard physically inspected the inventory owned by C&A at its then-current location in a warehouse in Gardena, California.  (Doc. 48-1, at 118-19).  C&A has submitted no evidence which conflicts with Dabbs' testimony.[3]

Considering the allegations in the complaint and the evidence submitted by the parties, the Court finds that South Bay's contacts with Oklahoma are insufficient to support specific jurisdiction over South Bay.  Critical to the Court's determination is the fact that it was C&A who first reached out to South Bay in California through Dan Maynard.  Maynard accompanied Dabbs to view the inventory at issue in California prior to the execution of a contract.  The services sought by C&A, which were ultimately the subject of the agreement between the parties, were to be performed exclusively in California.  The acts or omissions giving rise to C&A's lawsuit relate to the conditions of the storage of C&A's inventory in California.  The contract at issue is governed by California law.  Further, C&A has not put forth any evidence showing that any employee of South Bay ever set foot in Oklahoma in connection with the agreement between the parties.  South Bay heavily, if not exclusively, relies upon two emails sent by South Bay to C&A in Oklahoma which related to the contract. These emails do little more than request that proposed changes to the contract – which had already been sent to South Bay under

---

[3] The Court notes that jurisdictional discovery yielded almost no evidence upon which C&A relies in attempting to establish jurisdiction.  Instead, it has been South Bay that has relied upon the facts revealed in discovery.

circumstances unknown to the Court – be sent to South Bay again. The email from Dabbs also suggests that significant contract negotiations had already occurred, but it is unclear from the record when and where those negotiations took place. The two emails from South Bay to Oklahoma, upon which C&A places great weight, are insufficient standing alone to constitute purposeful availment, as "it is well-established that phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1077 (10th Cir. 1995) (citing *Continental American Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1314 (10th Cir. 1982)). Given these limited communications directed towards Oklahoma, South Bay cannot be said to have reached out into Oklahoma and purposefully availed itself of the benefit of doing business in Oklahoma. Indeed, the business efforts of South Bay have been directed to its warehouse in California, where C&A's products were stored and from which C&A's products were distributed.

In addition, the fact that shipments originating in South Bay's warehouses eventually made their way to Oklahoma does not alter this outcome. Any such shipments to Oklahoma were the result of the activities of third parties; namely, C&A's customers. The unilateral activity of a third party cannot constitute purposeful availment. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998) ("[C]ourts have been unwilling to allow states to assert personal jurisdiction over foreign defendants where the defendant's presence in the forum arose from the unilateral acts of someone other than the defendant.") (citing *World–Wide Volkswagen*, 444 U.S. at 295); *see also TJS Brokerage & Co., Inc. v. Mahoney*, 940 F. Supp. 784, 791 (E.D. Pa. 1996) (finding lack of personal jurisdiction where warehouse operator regularly shipped goods stored on behalf of customers into forum state)

C&A's reliance on this Court's opinions in *Kendall v. Turn-Key Specialists, Inc.*, 911 F. Supp. 2d 1185 (N.D. Okla. 2012) and *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300 (N.D. Okla. 2011) is similarly unpersuasive. In both *Kendall* and *Sleepy Lagoon*, there were disputes between the parties as to whether the respective defendants had initiated the business dealings between the parties, and in both instances the Court resolved these disputes in favor of the respective plaintiffs, as it was required to do. *Kendall*, 911 F. Supp. 2d at 1197-98; *Sleepy Lagoon*, 809 F. Supp. 2d at 1308; *see also Taylor*, 912 F.2d at 431. Here, there is no dispute that South Bay did not initiate business dealings with C&A. Instead, it was Dan Maynard, acting on behalf of C&A, who reached out to South Bay. As such, *Kendall* and *Sleepy Lagoon* are materially distinguishable.

C&A has failed to make a prima facie showing that South Bay has minimum contacts with Oklahoma. Hence, South Bay is not subject to specific jurisdiction in Oklahoma.

### B. General Jurisdiction

Because general jurisdiction does not involve contacts with the forum state directly related to the lawsuit, "courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant has 'continuous and systematic general business contacts'" with the forum state. *OMI Holdings,* 149 F.3d at 1091 (citation and quotation marks omitted). When evaluating whether a defendant has established general contacts with a particular forum, courts have considered, among other things, the following twelve factors:

> Whether the defendant conducts business in the state; (2) whether the defendant is licensed to conduct business in the state; (3) whether the defendant owns, leases, or controls property or assets in the state; (4) whether the defendant maintains employees, offices, agents, or bank accounts in the state; (5) whether the defendant's shareholders reside in the state; (6) whether the defendant maintains phone or fax listings in the state; (7) whether the defendant advertises or otherwise solicits business in the state; (8) whether the defendant travels to the state by way of salespersons or other representatives; (9) whether the defendant

9

pays taxes in the state; (10) whether the defendant visits potential customers in the state; (11) whether the defendant recruits employees in the state; and (12) whether the defendant generates a substantial portion of its national sales or income through revenue generated from in-state customers.

*Kendall*, 911 F. Supp. 2d at1196 (citing *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295-96 (10th Cir.1999)).

Apparently recognizing the weakness of its original assertion that South Bay is subject to general jurisdiction in Oklahoma, C&A made no mention of general jurisdiction in its supplemental briefing. The Court has nonetheless considered South Bay's ties to Oklahoma under the above-listed factors. Having so considered South Bay's relationship to Oklahoma, it is clear that South Bay does not have continuous and systematic contacts with Oklahoma sufficient to support general jurisdiction. Of the factors cited by the Court in *Kendall*, it appears from the record that nearly all of them can be answered in the negative. South Bay has almost no ties to Oklahoma, other than its dealings with C&A, which resides in Oklahoma. As such, it is not subject to general jurisdiction in Oklahoma.[4]

### C. Whether a Transfer is Appropriate

South Bay argues that the Court should transfer this litigation to the Central District of California pursuant to 28 U.S.C. § 1404, as that is the forum where it should have originally been brought.

Under 28 U.S.C. § 1404(a), a court may transfer a case to any judicial district in which it could originally have been filed "for the convenience of parties and witnesses." The Tenth

---

[4] Having found that South Bay does not have contacts with Oklahoma sufficient to support either specific or general jurisdiction, the Court needn't consider whether "traditional notions of fair play and substantial justice" are offended by the exercise of jurisdiction over South Bay. *See OMI Holdings*, 149 F.3d at 1091. In addition, in light of the Court's finding that it lacks jurisdiction over this case, it cannot consider the arguments raised by South Bay regarding the fraud claim alleged by C&A.

Circuit has identified several factors that should be considered by a district court when ruling on a motion to transfer:

> the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws, the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

The *Chrysler Credit* factors favor a transfer of this case to the Central District of California. The majority of witnesses, as well as the physical evidence in this case, are located in California. There is also a significant advantage in having a California court determine the laws of its own state, which govern the contract at issue. There does not appear to be any obstacle which would prevent C&A from obtaining a fair trial of this matter in California. In addition, venue is proper in the Central District of California, as South Bay resides there. *See* 28 U.S.C. § 1391 ("A civil action may be brought in….a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"). The Court therefore finds that a transfer of this case to the Central District of California is in the interests of justice.

**IT IS THEREFORE ORDERED** that Defendant South Bay Distribution's Motion to Dismiss or Transfer Venue (Doc. 18) and Brief in Support of the Motion to Dismiss or Transfer Venue (filed twice as Docs. 19 and 20) is **granted**.

This case is hereby **transferred** to the Central District of California pursuant to 28 U.S.C. § 1404(a).

**SO ORDERED** this 5th day of November, 2013.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE